UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALMETALS, INC.,

               Plaintiff,                    Case No. 19-13254

v.                                              Paul D. Borman
                                                  United States District Judge

MARWOOD METAL FABRICATION
LTD.,

               Defendant.
_____/

## OPINION AND ORDER GRANTING (1) DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT, AND (2) DEFENDANT'S MOTION FOR ADDITIONAL TIME TO ANSWER, PLEAD OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT

This is a collection action brought by Plaintiff Almetals, Inc. ("Almetals") against Defendant Marwood Metal Fabrication, Limited ("Marwood"). Before the Court is Defendant Marwood's Motion to Set Aside Default Judgment[1] and Motion for Additional Time to Answer, Plead or Otherwise Respond to Plaintiff's Complaint. (ECF No. 8.) For the reasons below, the Court will GRANT Defendant Marwood's Motion.

---

[1] Although Defendant's motion is titled as a "Motion to Set Aside Default Judgment," the Clerk has entered the default of Defendant Marwood (ECF No. 6), but the Court has not yet entered a default judgment. Accordingly, this is more accurately a motion to set aside default.

## I. BACKGROUND

Plaintiff filed its Complaint on November 5, 2019. (ECF No. 1, Compl.) The Complaint alleges that Plaintiff Almetals, a supplier of specially-procured aluminum services, issued a series of invoices to Defendant Marwood, a Canadian automotive supplier, for specially-procured aluminum in the amount of $101,461.86. (*Id.* ¶¶ 1, 3, 7.)[2] Marwood took delivery of the aluminum, but failed to pay Almetals. (*Id.* ¶¶ 1, 21-22.)

On October 9, 2019, Almetals demanded payment for the unpaid invoices from Marwood, and Marwood responded by letter dated October 30, 2019 that it "offset" the amounts owed due to alleged "downtime costs, scrap costs, and premium freight costs." (*Id.* ¶¶ 23-24.) Marwood contends in its reply brief that Plaintiff made late or at most only partial shipments of product starting in April 2019, which adversely impacted Defendant's delivery of its products to its customers and forced Defendant to locate another supplier. (ECF No. 10, Def.'s Reply at pp. 5-7, PgID 172-74.)

Almetals disputes that it is liable for such incidental, consequential or exemplary damages. (Compl. ¶ 26.) Almetals alleges that Marwood's alleged

---

[2] Marwood changed its name on June 1, 2018 to Marwood International, Inc. (ECF No. 9-4, Ontario Ministry of Government Services Corporation Profile Report dated 1/31/2020.) However, it continued to have the same Ontario Corporation Number and the same registered office address. (*Id.*)

2

"offset" and/or failure to pay for the aluminum is a breach of contract, and accordingly brings this lawsuit to recover the outstanding amounts Marwood owes for the aluminum it purchased from Almetals. (*Id.* ¶¶ 8, 29-30.) Plaintiff Almetals brings claims for Breach of Contract (Count I), Unjust Enrichment (Count II), and Action for the Price Pursuant to UCC 2-709 and MCL 440.2709 (Count III). (*Id.* ¶¶ 31-51.)

On November 5, 2019, the same date Almetals filed its Complaint in this case, it also provided Marwood's counsel with a courtesy copy of the Complaint and inquired whether counsel would accept service. (ECF No. 9-9, 11/5/2019 email.) A summons was issued for Defendant Marwood Metal Fabrication Limited on November 6, 2019. (ECF No. 3.)

Marwood acknowledged on November 13, 2019 that it had retained United States counsel "with respect to the Michigan litigation," and that it is "prepared to accept service of the Michigan claim if [Almetals is] prepared to accept service of the Ontario claim [Marwood] commenced against Almetals on October 30, 2019." (ECF No. 9-10, 11/13/2019 email.) Specifically, Marwood filed a lawsuit against Almetals in a Canadian court on October 30, 2019 alleging claims for breach of contract, negligence and negligent misrepresentation based on the same transactions underlying the allegations in this case. (ECF No. 10-2, Canadian Compl.)

Defendant Marwood states that on or about January 17, 2020, counsel for Marwood and counsel for Plaintiff discussed the status of the service of the Complaint. (ECF No. 8, Def.'s Mot. Set Aside Default at p. 1, PgID 111; ECF No. 8-1, Wagoner Declr. ¶¶ 2-8.) Counsel for Marwood stated at that time that he recently received a copy of the Complaint but that the service papers were incomplete in that they were not executed by the individual who served the Complaint and did not include the date of service. (Wagoner Declr. ¶¶ 2-3.) Marwood's counsel stated that he could not determine Marwood's response date, and asked Plaintiff's counsel for the completed attestation of service. (Wagoner Declr. ¶¶ 4-5.) Plaintiff's counsel responded at that time that he had not received any documentation confirming service and did not know when the Complaint was served, but that he would provide the executed attestation when it was received. (*Id.* ¶¶ 6-7.)

A Certificate of Service, filed in this case on January 27, 2020, indicates that "Troy Solinger, Director of Operations Marwood Industries" was served through the Hague Convention by Canadian Enforcement Officer David Miller on January 2, 2020. (ECF No. 4.)

On January 27, 2020, Plaintiff's counsel informed counsel for Marwood that he had received the perfected attestation, which he provided to Marwood. (Wagoner Declr. ¶ 8; ECF No. 8-2, 1/27/2020 email.) That attestation showed that service was

4

made on "Marwood Industries" on January 2, 2020.  Counsel for Marwood requested from Plaintiff's counsel a 21-day extension to respond to the Complaint. (Wagoner Declr. ¶ 12; 1/27/2020 email.)

Plaintiff did not respond to Defendant's request.  Instead, on January 28, 2020, Plaintiff filed a Request for Clerk's Entry of Default as to Defendant Marwood (ECF No. 5), and Clerk entered the Default that same day (ECF No. 6).

On January 30, 2020, counsel for Defendant Marwood filed an appearance and also filed the instant Motion requesting that the default be set aside and that it have 21 days to answer, plead or otherwise respond to the Complaint from the date the default is set aside.  (Def.'s Mot. Set Aside Def.)  Defendant subsequently shortened the requested time to respond to Plaintiff's Complaint in its reply brief to five business days after the Court sets aside the default. (ECF No. 10, Def.'s Reply at pp. 1-2, PgID 168-69.)  Defendant argues that the default should be set aside because: (1) the default was not willful; (2) Plaintiff cannot demonstrate any unfair prejudice; and (3) Defendant has several meritorious defenses, including that Plaintiff failed to name the proper party (naming Marwood Metal Fabrication Ltd. instead of Marwood International, Inc.) and Plaintiff engaged in numerous acts of breach of contract, negligence and misrepresentation.  (Def.'s Mot. Set Aside Def. at pp. 4-5, PgID 114-15.)

Plaintiff filed a response on February 13, 2020, arguing that Marwood's motion should be denied because: "(1) Marwood's defense that it is not the proper party is demonstrably not meritorious and (2) its conduct demonstrates an intent to thwart and delay this collection proceeding," and thus Marwood cannot demonstrate "good cause" to set aside the Clerk's entry of default. (ECF No. 9, Pl.'s Resp. at pp. 6-8, PgID 127-29.)

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) provides that a court may set aside a final judgment, order or proceeding for certain enumerated reasons including "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).

Courts evaluate the same three factors under both rules: "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844 (6th Cir. 1983). Even so, "the standard for applying [the three factors] to a motion to set aside a final judgment under Rule 60(b) is more demanding than their application in the context of a motion to set aside an entry of default under Rule 55(c)." *Dassault Systems, SA v. Childress*, 663 F.3d 832, 839 (6th Cir. 2011). The Sixth Circuit has explained the differences between the Rule 55(c) "good

cause" standard and Rule 60(b) standard as follows:

> Once a defendant fails to file a responsive answer, he is in *default,* and an entry of *default* may be made by either the clerk or the judge. A *default judgment* can be entered by the clerk only if a claim is liquidated, or if a claim is unliquidated, by the judge after a hearing on damages. A *default* can be set aside under rule 55(c) for "good cause shown," but a default that has become final as a *judgment* can be set aside only under the stricter rule 60(b) standards for setting aside final, appealable orders.

*Dassault Systems*, 663 F.3d at 839 (quoting *Shepard Claims Serv. Inc. v. William Darrah & Assocs.,* 796 F.2d 190, 194 (6th Cir. 1986)) (emphasis in original)). The more stringent Rule 60(b) standard does not apply unless "the court has determined damages and a judgment has been entered." *Dassault Systems*, 663 F.3d at 839 (quoting *O.J. Distrib., Inc. v. Hornell Brewing Co.,* 340 F.3d 345 (6th Cir. 2003)). Here, there has been neither a final judgment entered nor any money damages awarded. The Court will therefore evaluate the three factors under the less strict "good cause" standard of Rule 55(c).

As a general rule, Sixth Circuit decisions on Rule 55(c) motions to set aside default are "extremely forgiving to the defaulted party and favor a policy of resolving cases on the merits instead of on the basis of procedural missteps." *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 322 (6th Cir. 2010) (collecting cases).

## III. DISCUSSION

Defendant Marwood argues that the *United Coin Meter* factors favor setting aside the default in this case. Defendant contends that the default was not willful because the parties had been discussing the status of service, which was uncertain, and Defendant had requested additional time to respond to the Complaint prior to Plaintiff requesting the clerk to enter default. (Def.'s Mot. Set Aside Def. at p. 4, PgID 114.) Defendant explains that this demonstrates that it intended to respond to the Complaint but was attempting to determine the proper date of service. (*Id.*) Defendant also argues that Plaintiff cannot demonstrate any unfair prejudice because, assuming service was proper, it was served on January 2, 2020 and the default was entered on January 28, 2020. (*Id.*) Finally, Defendant contends that it has several meritorious defenses in this matter, including that Plaintiff has failed to name the proper party (which it contends it Marwood International, Inc.), and Plaintiff engaged in several acts of breach of contract, negligence and misrepresentation during the course of the parties' business dealings. (*Id.* at pp. 4-5, PgID 114-15.)

Plaintiff does not argue that it would suffer prejudice if the default was set aside.[3] Instead, Plaintiff argues that Defendant does not have a meritorious defense

---

[3] Indeed, as Defendant points out, Plaintiff agreed to withdraw its request for default if Defendant would consent to jurisdiction in the Eastern District of Michigan. (Def.'s Reply at 4, PgID 171, citing Ex. 1, 2/5/2020 email (ECF No. 10-1).) To

based on its argument that it is not the proper party, and that Marwood International Inc. is, because Defendant merely changed its name. (Pl.'s Resp. at p. 6, PgID 127, citing in part *Ford Motor Co. v. Versata Software, Inc.*, No. 15-cv-10628, 2018 WL 3581134, at *4 (E.D. Mich. June 6, 2018) (holding that a party that merely changes its name still exists, just under its new name).) Defendant concedes that this "proper name" issue can be remedied under Fed. R. Civ. P. 15(c). (Def.'s Reply at p. 5, PgID 172.) Thus, this does not appear to be a meritorious defense to Plaintiff's Complaint.

Plaintiff, however, does not address Defendant's other asserted meritorious defense – that Plaintiff is not entitled to any damages from Defendant because Plaintiff failed to fulfill its contractual obligations and engaged in several acts of breach of contract, negligence and misrepresentation during the course of the parties' dealings. Defendant asserts that these claims are currently pending in the Canadian action it filed against Almetals prior to this case.[4] This asserted defense satisfies the "meritorious defense" factor. *See INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 399 (6th Cir. 1987) ("[A] defense is sufficient if it contains even a

---

establish prejudice, a plaintiff "must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990) (citation omitted). Plaintiff has failed to make any such showing in this case.

[4] Defendant stated in its reply brief that it intends to promptly file a Motion to Stay this case pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) if the clerk's default is set aside, based on the existence of the previously-filed, parallel Canadian action. (Def.'s Reply at p. 3, PgID 170.)

9

hint of a suggestion which, proven at trial, would constitute a complete defense. The key consideration is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.") (internal citations and quotation marks omitted).

Plaintiff also argues that Defendant's motion should be denied because its conduct demonstrates and intent to thwart judicial proceedings. (Pl.'s Resp. at pp. 7-8, PgID 128-29.) For purposes of Rule 55(c), a defendant must display conduct that demonstrates an "intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433 (6th Cir. 1996) (citation omitted). Plaintiff contends that Defendant was served on January 2, 2020, that Defendant's counsel "apparently understood" that Marwood was served as of January 17, 2020, but it took no steps to answer, and that it in fact could have done so any time after November 5, 2019, when it was provided a courtesy copy of the Complaint. (*Id.*)

However, Defendant has demonstrated that its default was not willful. It reached out to Plaintiff on January 17, 2020 questioning the status of service and the response date, and Plaintiff's counsel stated at that time that he did not have a fully executed copy of the attestation to confirm the response date but would provide it when it was received. (Wagoner Declr. ¶ 6.) Plaintiff provided that confirmation on January 27, 2020, and Marwood's counsel requested an extension of time to

10

respond to the Complaint. (*Id.* ¶ 27.) Instead of granting that request for an extension, Plaintiff instead filed a request for clerk's entry of default the very next day, without providing to a copy of that request to Defendant. (See ECF No. 5.) Upon learning of the request and the clerk's entry of default, Defendant promptly filed the instant motion. This conduct simply does not demonstrate an "intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings." *See Thompson*, 95 F.3d at 433.

Further, Plaintiff's contention that Defendant could have answered the Complaint after being given a courtesy copy of the Complaint in November 2019 fails to demonstrate "bad faith" by Defendant. Plaintiff cites no authority supporting the contention that a foreign defendant acts in bad faith when it refuses to waive its right to service. Indeed, Fed. R. Civ. P. 4(d)(2) only penalizes defendants "located within the United States" who refuse to waive service—and even then only for "good cause." This Court rejects the notion that Defendant's insistence upon proper service was somehow a bad-faith act.

Sixth Circuit precedent strongly favors "a policy of resolving cases on the merits instead of on the basis of procedural missteps." *United States v. $22,050.00 U.S. Currency*, 595 F.3d at 322. The lack of prejudice to Plaintiff, as well as the absence of any colorable argument that Defendant's asserted defenses lack merit, further support the conclusion that the default should be set aside pursuant to Rule

55(c). *See Thompson*, 95 F.3d at 434 ("'Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits.'") (quoting *Rooks v Am. Brass Co.*, 263 F.2d 166, 169 (6th Cir. 1959)).

After considering the Sixth Circuit's three-factor analysis, Defendant's Motion to Set Aside Default must be granted. The Court will vacate the Clerk's entry of default and order Defendant to respond to Plaintiff's Complaint within five (5) business days of this Opinion and Order.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Defendant Marwood's Motion to Set Aside the Default and Motion for Additional Time to Answer, Plead or Otherwise Respond to Plaintiff's Complaint. (ECF No. 8.) The Clerk's Entry of Default (ECF No. 6) is hereby VACATED, and Defendant shall file a response to Plaintiff's Complaint within **five (5) business days of the date of this Opinion and Order**.

IT IS SO ORDERED.

s/Paul D. Borman<br>
Paul D. Borman<br>
United States District Judge

Dated: April 9, 2020